**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CITIZENS SECURITIES, INC.,**

          **Plaintiff,**

 vs.                 1:19-CV-916
                     (MAD/DJS)
**RONALD H. BENDER, JR.,**

          **Defendant.**

---

**APPEARANCES:**         **OF COUNSEL:**

**ADLER, POLLOCK & SHEEHAN, PC**  **GEOFFREY WILLIAMS MILLSOM,
ESQ.**
One Citizens Plaza
Ste. 8th Floor
Providence, Rhode Island 02903
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Citizens Securities, Inc. commenced this action on July 26, 2019 against Defendant Ronald H. Bender, Jr., asserting claims of breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business relations, misappropriation of trade secrets, unfair competition, conversion, and breach of fiduciary duty. *See* Dkt. No. 1. On July 29, 2019, Plaintiff filed an emergency motion for a temporary restraining order and preliminary injunction, which is currently before the Court. *See* Dkt. No. 5.

### II. BACKGROUND

Plaintiff is registered as a broker-dealer with the United States Securities and Exchange Commission and the Financial Industry Regulatory Authority ("FINRA"). *See* Dkt. No. 1 at ¶ 3. Plaintiff does business through financial advisors who provide its clients with investment advice,

financial planning, and portfolio management. *See id.* at ¶ 8. Financial advisors are assigned to specific Citizens Bank branches to serve the investment needs of Citizens Bank's clients. *See id.* at ¶ 10. Because Plaintiff is a bank broker-dealer, almost all of its financial advisors' clients are referred through bank branch channels. *See id.*

Plaintiff's client information—including client lists and names, addresses, investment holdings, and other financial information—is valuable, confidential, not generally known throughout the securities industry, and not readily or easily ascertainable by Plaintiff's competitors. *See id.* at ¶ 11. Plaintiff's clients consider their financial information to be highly secret and expect Plaintiff to take reasonable steps to insure its confidentiality. *See id.* at ¶ 12. To ensure client information remains confidential, Plaintiff has taken several steps, including the following: (1) requiring employees to execute confidentiality agreements; and (2) instituting and monitoring security systems that limit access to hard copy and computer data and restrict access to confidential client information to only those persons who have a legitimate business need to access it. *See id.* at ¶ 13. Additionally, Plaintiff's computers are configured such that an employee cannot move or copy information to a CD, DVD, USB drive, or any other storage device. *See id.* Further, in recognition of the confidential and proprietary nature of Plaintiff's client information, Plaintiff requires its financial advisors to agree, as a condition of employment, not to solicit Plaintiff's customers for one year after termination of the employment relationship. *See id.*

Plaintiff hired Defendant as a financial advisor in December 2007. *See id.* at ¶ 14. As a condition of his employment, Defendant entered into an Employment Agreement with Plaintiff. *See id.* at ¶ 15. In the Employment Agreement, Defendant recognized and agreed that documents containing Plaintiff's client information were confidential trade secrets and were the exclusive

property of Plaintiff. *See id.* at ¶ 16. Defendant agreed to return all such documents to Plaintiff upon cessation of his employment with Plaintiff, and agreed not to use or disclose those documents, or the information contained therein, except in connection with his employment with Plaintiff. *See id.*; *see also* Dkt. No. 1-1 at 3-4. In addition, Defendant agreed that for a period of one year after the cessation of his employment with Defendant, he would not solicit any of Plaintiff's clients whose name became known to him as a direct or indirect result of his employment with Plaintiff. *See* Dkt. No. 1 at ¶ 17; Dkt. No. 1-1 at 5-6. Defendant also recognized in the Employment Agreement that any breach of the non-solicitation provision may result in irreparable injury to Plaintiff, for which money damages are insufficient, and that Plaintiff is entitled to enforce the non-solicitation provision by obtaining an injunction for specific performance. *See* Dkt. No. 1 at ¶ 18; Dkt. No. 1-1 at 6. Upon beginning employment with Plaintiff, Defendant also signed a Code of Ethics, in which he recognized the confidentiality of Plaintiff's customers and other information, agreed that this information was proprietary to Plaintiff, promised to safeguard the information, and agreed not to use Plaintiff's customers' confidential information except in connection with his employment. *See id.* at ¶ 19.

On or about April 19, 2019, Defendant voluntarily resigned from Plaintiff's employment. *See id.* at ¶ 21. On April 22, 2019, Plaintiff sent Defendant a letter reminding him of his non-solicitation and confidentiality obligations pursuant to the Employment Agreement. *See id.* at ¶ 22.

According to Plaintiff, on April 22, 2019, Defendant began working for or on behalf of State Employees Federal Credit Union ("SEFCU") and LPL Financial LLC ("LPL"). *See id.* at ¶ 24. Plaintiff claims that, despite receipt of their letter reminding Defendant of his obligation pursuant to the Employment Agreement, Defendant initiated contact with and solicited its clients,

3

in an attempt to convince them to move their accounts to LLP and SEFCU, in violation of the Employment Agreement. *See id.* at ¶ 23.

Specifically, Plaintiff alleges that shortly after Defendant's resignation, it learned that Defendant was actively initiating contact with and soliciting Plaintiff's clients whom Defendant previously serviced while employed by Plaintiff. *See id.* at ¶ 26. Defendant called numerous clients of Plaintiff and attempted to convince them to move their investments to SEFCU/LPL. *See id.* at ¶ 27. During at least one of these calls, Defendant appeared to know detailed information about the customer's investments, including upcoming maturity dates, which he could only know if he had retained confidential information regarding the client's portfolio with him when he left. *See id.*

Plaintiff claims that, as of the filing of their motion for a temporary restraining order, several clients that Defendant served while employed by Plaintiff have already transferred assets to SEFCU/LPL. *See* Dkt. No. 5-6 at ¶ 16; Dkt. No. 5-3 at ¶ 7; Dkt. No. 5-4 at ¶ 6. The total assets involved in these transfers exceed $14 million. *See* Dkt. No. 5-6 at ¶ 16. Additionally, several of Plaintiff's remaining clients have indicated that they are considering a move to SEFCU/LPL. *See id.*

### III. DISCUSSION[1]

**A.     Standard**

"Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies, which are 'never awarded as of right,' or 'as a routine matter.'" *Rush v. Hillside Buffalo,*

---

[1] Although Plaintiff's claims against Defendant are subject to final disposition in arbitration, the Court has jurisdiction to issue a temporary restraining order/preliminary injunction to preserve the status quo pending arbitration. *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (citation omitted).

*LLC*, 314 F. Supp. 3d 477, 483-84 (W.D.N.Y. 2018) (quotation omitted). In the Second Circuit, the standard for entry of a temporary restraining order is the same as for a preliminary injunction. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases).

A party seeking a preliminary injunction must demonstrate the following: "(1) 'a likelihood of success on the merits or ... sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana*, 784 F.3d at 895 (quotation omitted).

**B.      Likelihood of Success**

*1. Breach of Contract*[2]

"To succeed on a breach of contract claim under Rhode Island law, a plaintiff must prove that (1) an agreement existed between the parties, (2) the defendant breached the agreement, and (3) the breach caused (4) damages to the plaintiff." *Barkan v. Dunkin' Donuts, Inc.*, 627 F.3d 34, 39 (1st Cir. 2010) (citing *Petrarca v. Fid. & Cas. Ins. Co.*, 884 A.2d 406, 410 (R.I. 2005)) (other citation omitted). In addition, contracts governed by Rhode Island law include "an implied covenant of good faith and fair dealing between parties." *Hord Corp. v. Polymer Research Corp. of Am.*, 275 F. Supp. 2d 229, 237 (D.R.I. 2003) (citing *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113, 1115 (R.I. 2002)). The implied covenant of good faith is regarded as a promise by each contracting part to act in a manner consistent with the purpose of the contract. *See Ross-Simons of Warwick, Inc. v. Baccarat*, 66 F. Supp. 2d 317, 330 (D.R.I. 1999).

---

[2] The Employment Agreement contains a Rhode Island choice of law provision. *See* Dkt. No. 5-7 at 7. As such, the Court will apply Rhode Island law to the breach of contract claim.

5

As Plaintiff correctly contends, the allegations set forth in the complaint and the evidence submitted in support of their motion convincingly demonstrate that Defendant is liable to Plaintiff for breaching the Employment Agreement. The declarations of Alicia Gopi, Margaret Koetzner, Patricia Netoskie, and Christopher Skinner set forth facts that, if true, plausibly demonstrate that Defendant breached the Employment Agreement's confidentiality and non-solicitation provisions by using Plaintiff's confidential and proprietary information and by soliciting Plaintiff's clients after his employment with Plaintiff ended. The Employment Agreement expressly makes Plaintiff's client information confidential and proprietary to Plaintiff and requires the immediate return of such information upon cessation of employment. *See* Dkt. No. 5-7. The Agreement also makes clear that the client relationship belongs to Plaintiff, not to the Financial Advisor, and requires the Financial Advisor to refrain from soliciting Plaintiff's clients for a period of one year after the employment relationship ends. *See id.* Defendant's alleged conduct violates these provisions.

Moreover, Rhode Island law recognizes the validity of and enforces reasonable non-solicitation provisions such as those contained in the Employment Agreement. When a contract contains a restrictive covenant such as a non-solicitation provision, Rhode Island courts will uphold the covenant if it is reasonable. *See Durapin, Inc. v. Am. Prod., Inc.*, 559 A.2d 1051, 1053 (R.I. 1989). In determining whether a restrictive covenant is reasonable, Rhode Island courts consider whether "(1) the provision is ancillary to an otherwise valid transaction or relationship, such as an employment contract ... , (2) the provision is supported by adequate consideration, ... and (3) there exists a legitimate interest that the provision is designed to protect." *Durapin*, 559 A.2d at 1053 (citations omitted); *see also In re Givens*, No. 96-13585, 2001 WL 34136695, *4 (D.R.I. Mar. 16, 2001) (same).

The non-solicitation provision contained in the Employment Agreement is both ancillary to valid transactions and is supported by consideration. Both the confidentiality and non-solicitation provisions are designed to protect Plaintiff's interests in its confidential customer information and goodwill. Courts have repeatedly recognized that these interests are legitimate and justify enforcement of restrictive covenants. *See, e.g.*, *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 17 (1st Cir. 2009) (applying Rhode Island law and holding that "protecting a business's confidential information and goodwill—such as the special relationship [an employer's] sales force has developed with customers"—is a legitimate interest). Further, the one-year non-solicitation period is reasonable in time. *See In re Givens*, 2001 WL 34136695, at *5.

Accordingly, the Court finds that Plaintiff is likely to succeed on the merits of its breach of contract claim.

### 2. Misappropriation of Trade Secrets

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999) (citations omitted). "[A] trade secret is 'any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" *Id.* at 44 (quotation and other citation omitted). In determining whether information constitutes a trade secret, New York courts have considered the following factors:

> "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of

> the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

*Id.* (quoting *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993)).

Again, Plaintiff has demonstrated a likelihood of success as to its misappropriation of trade secrets claim. It is well established that "'[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected at the owner's instance against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable.'" *Haber*, 188 F.3d at 44 (citing cases). Plaintiff's customer lists and information are trade secrets. Plaintiff derives economic value, actual and potential, from this information not being generally known to or readily ascertainable by proper means by others who could obtain economic value from its disclosure or use. *See* Dkt. No. 5-6 at ¶ 7. This information includes not only the means by which an investment advisor can contact the client, but also the client's bank balance, net worth, investment preferences, risk tolerance, and other nonpublic personal information. *See id.*

Moreover, Plaintiff takes reasonable steps to protect this information. First, the information is contained in its Salesforce relationship management database. *See id.* Employees must have a username and password to enter the database, and access is restricted to only those employees whose job duties require its use. *See id.* Further, the information cannot be moved or copied from an employee's computer to any form of external storage device. *See id.*

Finally, as discussed in more detail above, Plaintiff has sufficiently alleged that Defendant used this proprietary information by contacting Plaintiff's clients after his employment terminated. As such, Plaintiff has demonstrated that it is likely to succeed on its misappropriate of trade secrets cause of action.

*3. Conversion*

Similarly, Plaintiff has demonstrated that it is likely to succeed on its claim of conversion. "To establish a cause of action to recover damages for conversion, 'the plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question—to the exclusion of the plaintiff's right.'" *Lapp Insulators LLC v. Gemignani*, No. 09-cv-0694, 2011 WL 1198648, *12 (W.D.N.Y. Mar. 9, 2011) (quotation omitted). New York courts have held that the unauthorized dominion over "[e]lectronic information suffices" to state a claim for conversion. *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010); *see also Lapp Insulators*, 2011 WL 1198648, at *13.

The evidence before the Court demonstrates that Plaintiff's client information is its exclusive property. *See* Dkt. No. 5-6 at ¶ 6; Dkt. No. 5-7; Dkt. No. 5-9. As such, Defendant's taking and use of this information without Plaintiff's consent would constitute conversion.

Based on the foregoing, the Court finds that Plaintiff has demonstrated that it is likely to succeed on its conversion cause of action.

**C.      Irreparable Harm**

An employer suffers irreparable harm when a former employee's conduct threatens the employer's customers, goodwill, and reputation. *See Miss Am. Org. v. Mattel, Inc.*, 945 F.2d 536, 546 (2d Cir. 1991) (collecting cases). Similarly, courts have found that "[i]rreparable harm to an employer may also result where an employee has misappropriated trade secrets or confidential customer information." *Innoviant Pharmacy*, 390 F. Supp. 2d at 189; *see also Haber*, 188 F.3d at 49 (holding that the "'loss of trade secrets cannot be measured in money damages' because '[a] trade secret once lost is, of course, lost forever)'") (quotation omitted).

In the present matter, the Court finds that Plaintiff has demonstrated that it will be irreparably harmed absent injunctive relief. It has alleged that it has lost and will continue to lose clients because of Defendant's actions. The evidence before the Court sufficiently demonstrates the irreparable harm necessary to support injunctive relief. *See Ayco Co., L.P. v. Feldman*, No. 1:10-cv-1213, 2010 WL 4286154, *6 (N.D.N.Y. Oct. 22, 2010) (finding that the plaintiff established irreparable harm when the defendant, a financial advisor, abruptly resigned to take a job with a competitor and convinced several of the plaintiff's clients to move to the defendant's new employer, all in violation of a non-compete provision); *see also Citizens Bank, N.A. v. Baker*, No. 18-cv-826, 2018 WL 4853318, *3-*4 (W.D. Pa. Oct. 5, 2018) (holding that "an injunction is necessary to prevent irreparable harm and loss of goodwill and relationships with customers who have remained with Citizens, despite [the former employees'] overtures").

Plaintiff will lose incalculable goodwill, and its customer relationships will be immeasurably damaged if Defendant is permitted to continue using Plaintiff's confidential information to solicit Plaintiff's customers on behalf of one of Plaintiff's direct competitors. Accordingly, the Court finds that Plaintiff has demonstrated the requisite irreparable harm.

**D.    Balance of Hardships and Public Interest**

The Court also finds that Plaintiff has demonstrated that the balance of hardships and public interest favor it. Plaintiff will continue to suffer substantial harm absent an injunction through Defendant's use of proprietary information to lure Plaintiff's clients to one of Plaintiff's direct competitors. Defendant, however, will only suffer minimal harm if an injunction is granted. An injunction will not prevent Defendant from earning a living, working for SEFCU/LPL, or any other competitor of Plaintiff, or even competing with Plaintiff for customers in general. Rather, an injunction will simply prohibit Defendant from soliciting business from

Plaintiff's clients, who he agreed not to solicit as a condition of his employment, for one year or until FINRA arbitrates this case. In similar situations, courts routinely find that the equities favor the employer. *See McLaughlin, Piven, Vogel, Inc. v. W.J. Nolan & Co., Inc.*, 114 A.D.2d 165, 174-75 (2d Dep't 1986); *Feldman*, 2010 WL 4286154, at *6-*7; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano*, 85 F. Supp. 2d 491, 497-98 (E.D. Pa. 2000) (holding that a broker's alleged harm was "self inflicted" when he chose to breach a non-solicitation and confidentiality agreement and rejecting the broker's argument that an injunction would harm his livelihood, because he was free to engage in the brokerage business so long as he did not solicit his former employer's clients or use its confidential information).

Finally, the Court finds that the issuance of an injunction is in the public interest because "[t]he public interest is served by the enforcement of the parties' lawful agreement." *Main St. Baseball, LLC v. Binghamton Mets Baseball, Inc.*, 103 F. Supp. 3d 244, 263 (N.D.N.Y. 2015) (citations omitted); *see also Citibank N.A. v. Kyle*, No. 15-cv-3298, 2015 WL 3755788, *5 (E.D. Pa. June 16, 2015) (holding that "enforcing valid contractual provisions and protecting business investments, as well as confidential customer information," constitute "compelling public interests").

Based on the foregoing, the Court grants Plaintiff's request for a temporary restraining order.

### IV. CONCLUSION

Upon consideration of the Complaint, Memorandum of Law in Support of Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction, the Declarations of Margaret Koetzner, Christopher Skinner, Alicia Gopi, Patricia Netoskie, and Geoffrey W.

11

Millsom, Esq., the Court finds that Plaintiff has sufficiently shown good cause to proceed by order to show cause in lieu of a Notice of Motion in satisfaction of Local Rule 7.1(e).

Moreover, having considered the submissions, the Court finds that Plaintiff has established a likelihood of success on the merits, that it will be irreparably harmed absent a temporary restraining order, and that the balance of hardships tips in its favor. As such, the Court grants the application for a temporary restraining order as set forth below.

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for a temporary restraining order (Dkt. No. 5) is **GRANTED**; and the Court further

**ORDERS** that decision on Plaintiff's motion for a preliminary injunction (Dkt. No. 5) is **RESERVED**; and the Court further

**ORDERS** that Defendant Ronald H. Bender, Jr. show cause, if there be any, on **Monday, August 19, 2019, at 10:00 a.m.**, before the Honorable Mae A. D'Agostino, United States District Judge, at the James T. Foley United States Courthouse, 445 Broadway, Albany, New York, why an Order should not be entered pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining Defendant during the pendency of this action from:

(1) from contacting or soliciting business from any current or prospective client of Citizens whom Mr. Baker served or whose name became known to Mr. Baker while he was employed by Citizens;

(2) from altering, destroying, using, disclosing, or transmitting Citizens' records or the information contained therein, including but not limited to the names, addresses, email addresses, telephone numbers, and financial information of Citizens' current and prospective clients; and

(3) from altering any of his computer environments including desktops, laptops, tablets, and smart phones or mobile devices, including those that Defendant uses at or for State

Employees Federal Credit Union or LPL Financial LLC, pending further order of this Court.

And the Court further

**ORDERS** that Defendant shall file any response in opposition to Plaintiff's motion for a preliminary injunction by **Friday, August 9, 2019**; and the Court further

**ORDERS** that Plaintiff shall file any reply to Defendant's response by **Wednesday, August 14, 2019**; and the Court further

**ORDERS** that, sufficient reason having been shown, pending the hearing on Plaintiff's application for a Preliminary Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant is temporarily enjoined and restrained, until further order of this Court, as follows:

(1) Defendant is prohibited from contacting or soliciting business from any current or prospective client of Citizens whom Defendant served or whose name became known to Defendant while he was employed by Citizens;[3]

(2) Defendant is prohibited from altering, destroying, using, disclosing, or transmitting Citizens' records or the information contained therein, including but not limited to the names, addresses, email addresses, telephone numbers, and financial information of Citizens' current and prospective clients; and

(3) Defendant is prohibited from altering any of Defendant's computer environments including desktops, laptops, tablets, and smart phones or mobile devices, including those that Defendant uses at or for State Employees Federal Credit Union or LPL Financial LLC, pending further order of this Court.

And the Court further

---

[3] The Court notes that this temporary restraining order does not prohibit Defendant from providing financial advice and services to other individuals who were not customers of Defendant.

13

**ORDERS** that, pending the hearing and determination of Plaintiff's motion for a preliminary injunction, Defendant is hereby directed to immediately cease using and return to Plaintiff's attorney all of Plaintiff's property, including without limitation, confidential business or trade secret information and all other documents, computer disks or other means of electronic storage, which contain any of Plaintiff's business information and which are in the possession, custody, or control of Defendant; and the Court further

**ORDERS** that Plaintiff shall file a bond with, or give other security to, the Clerk of the Court in the amount of **$50,000** no later than **Monday, August 5, 2019**, to secure payment of costs for damages sustained by Defendant, if he is found to have been wrongfully enjoined or restrained. This Memorandum-Decision and Order, however, is effective immediately; and the Court further

**ORDERS** that personal service of a copy of this Memorandum-Decision and Order, together with the papers upon which it was granted, shall be made on or before **5:00 p.m. on Friday, August 2, 2019** with proof of service thereafter filed with the Court.

**IT IS SO ORDERED.**

Dated: August 1, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge